[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 287.]

WAGNER ET AL., APPELLANTS AND CROSS-APPELLEES, *v*. MIDWESTERN
INDEMNITY COMPANY, APPELLEE AND CROSS-APPELLANT, ET AL.

[Cite as *Wagner v. Midwestern Indemn. Co.*, 1998-Ohio-111.]

*Insurance—Insurer intentionally acts in bad faith in the processing of a claim of its insured, when—Innocent spouse rule construed and applied—Civil procedure—Prejudgment interest awarded, when.*

(No. 96-2730—Submitted April 22, 1998 at the Seneca County Session—Decided September 30, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Seneca County, No. 13-95-51.

————————————

{¶ 1} Appellant and cross-appellee, Verlin L. Wagner, owned a family grocery store located in Fostoria, Ohio. Before closing the store on the evening of August 27, 1991, he decided to spray two cans of insecticide around the store due to a recent infestation of insects caused by bird seed that had been set out for sale. Since Wagner wanted to avoid spraying until after everyone had left, he waited till approximately 9:00 p.m., after the two employees working that night had gone. Mr. Wagner finished fumigating the store, set the store alarm located near the rear exit, and locked the door as he left a few minutes after 9:00 p.m.

{¶ 2} At approximately 9:10 p.m., the Fostoria Police and Fire Departments received an alarm from the store. At home, Verlin's wife Ruth was immediately notified of the alarm, and set out with other members of the family to the store. They intercepted Mr. Wagner on his way home, and together they returned to the store to discover that it was on fire.

{¶ 3} The grocery store was insured through Midwestern Indemnity Company ("Midwestern"), and Mr. Wagner notified his insurance agent of the fire

the next day. The following day, Midwestern sent a claims adjuster to the fire scene to whom Mr. Wagner recounted his actions prior to leaving the store. Midwestern proceeded to hire a fire investigator and by September 27, 1991, the physical investigation had been completed. Midwestern's fire investigator did not establish who set the fire, but concluded that it was incendiary, that is, it had been deliberately set. Prior to this determination, the Fostoria Fire Department had listed the cause of the fire as undetermined, but later amended its report to reflect that the fire was incendiary. There is no evidence that Mr. Wagner was ever questioned, charged, or convicted of arson.

{¶ 4} In November 1991, Mr. Wagner filed a proof-of-loss claim with Midwestern as required by the terms of the insurance policy. Pursuant to the policy, Midwestern had thirty days from the submission of the proof-of-loss to either pay or deny the claim. However, Midwestern did nothing until approximately nine and one-half months later, when it informed Mr. Wagner that it was denying the claim because it suspected him of arson.

{¶ 5} On October 23, 1992, Verlin L. and Ruth A. Wagner filed suit against Midwestern, seeking recovery under their insurance policy for damages, alleging that Midwestern had breached its contract and acted in bad faith.[1] The case went to trial on August 29, 1994. At the conclusion of opening statements, the court granted a directed verdict on Ruth Wagner's breach of contract claim, based on the fact that Midwestern would not present any evidence against her and that she was an innocent spouse.

{¶ 6} The jury returned a unanimous verdict in favor of the Wagners and awarded them attorney fees and punitive damages. Specifically, the jury awarded Mr. Wagner $500,000 for breach of contract and $1,000,000 for bad faith. The jury

---

1. The complaint also alleged that Midwestern was liable for defamation; however, the jury eventually returned a verdict in Midwestern's favor on this issue.

awarded Mrs. Wagner $500,000 for breach of contract, and $300,000 for bad faith. The trial court determined that Verlin and Ruth Wagner were entitled to punitive damages in the amount of $800,000, and also awarded the Wagners attorney fees and prejudgment interest.

{¶ 7} The court of appeals affirmed in part and reversed in part. Specifically, the appellate court (1) ordered a remittitur of the contract damages to $197,701.98, (2) reversed the trial court's directed verdict in favor of Mrs. Wagner, (3) reversed the judgment on the issue of bad faith and remanded those claims for retrial and, thus, also reversed the award of punitive damages, and (4) reversed the prejudgment interest award. The Wagners filed an appeal, and Midwestern cross-appealed.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

_____

*Oxley, Malone, Fitzgerald & Hollister, Dennis M. Fitzgerald* and *Julie A. Davenport; Hackenberg, Beutler & Rasmussen* and *Robert A. Beutler,* for appellants and cross-appellees.

*Ulmer & Berne, L.L.P., Harold H. Reader* and *Diane Sheehy Sebold*, for appellee and cross-appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 9} This appeal and cross-appeal presents a number of issues for our consideration. First, we must decide whether the judgment of the court of appeals to remand the issue of the Wagners' bad faith claims was proper. Second, we must determine whether the appellate court's decision to reverse the directed verdict in favor of Ruth Wagner on the breach of contract claim was appropriate, based on the application of the "innocent spouse" rule. Next, we must decide whether the court of appeals erred when it found that the trial court abused its discretion in

awarding prejudgment interest. Finally, we must address Midwestern's claim that it was entitled to a directed verdict on Verlin and Ruth Wagner's bad faith claims as a matter of law. For the following reasons, we (1) affirm the court of appeals' decision with respect to the directed verdict in favor of Ruth Wagner, (2) affirm the remittitur of contract damages to $197,701.98, (3) reverse the court of appeals' decision to remand the issue of bad faith for a new trial pursuant to *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, and reinstate the bad faith verdicts in favor of the Wagners, (4) reinstate the award of attorney fees and punitive damages, and (5) reinstate the trial court's grant of prejudgment interest.

## I. Remand of Bad Faith Issue Under *Zoppo*

{¶ 10} The court of appeals reversed the jury's verdict, finding that Midwestern had acted in bad faith, as the jury instructions had been based on the now-defunct bad-faith standard set forth in *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228. In *Said*, we held that "[a]n insurer has a duty of good faith towards its insured implied by law. This duty may be breached by an intentional failure by the insurer to perform under its contract with the insured." *Id.* at paragraph two of the syllabus. In the interim between the jury verdict and the court of appeals' decision, we overruled the intent requirement in *Said* and returned to a reasonable-justification standard in deciding bad faith cases. In *Zoppo*, we held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Id.* at paragraph one of the syllabus. We found it necessary to overrule *Said* on the intent issue because "[r]ather than clarify the standard of proof required in the area of bad faith * * * [the *Said* decision] caused greater confusion by erroneously making intent an element of the tort of bad faith." *Zoppo,* 71 Ohio St.3d at 554, 644 N.E.2d at 399.

**{¶ 11}** The court of appeals in this case determined that a remand on the bad faith issue was necessary based on the doctrine set forth in *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467, that a decision of a court of supreme jurisdiction that overrules a former decision becomes retrospective in its operation, and the effect is not that the former decision was bad law, but that it never was the law. *Id.* at 210, 57 O.O. at 411, 129 N.E.2d at 468.

**{¶ 12}** However, blind application of the *Peerless* doctrine has never been mandated by this court. In *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 665 N.E.2d 664, we refused to remand a case pursuant to *Zoppo*, where the trial court had applied the intent requirement of *Said*. As this court stated, "We decline to extend *Zoppo* to this particular case of bad faith failure to defend, as *Zoppo* was decided after the trial court's and court of appeals' decisions in this case. This case has been litigated for over ten years and should come to final resolution before this court." *Roberts* at 633, 665 N.E.2d at 667.

**{¶ 13}** Consideration should be given to the purpose of the new rule or standard and to whether a remand is necessary to effectuate that purpose. The reasonable-justification standard set forth in *Zoppo* lessened the standard of proof necessary to show that an insurer acted in bad faith, as proof of actual intent was no longer required. See *Said,* 63 Ohio St.3d at 702, 590 N.E.2d at 1237-1238 (Douglas, J., dissenting). It is axiomatic that a standard based on intent imposes a higher burden of proof than one based on reasonableness. See, generally, *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100, 115, 522 N.E.2d 489, 503; see, also, Prosser & Keeton, Law of Torts (5 Ed.1984) 37, Section 8. The jury in this case found that Midwestern intentionally acted in bad faith. Therefore, it stands to reason that they would have found Midwestern liable under the lesser standard of reasonable justification.

**{¶ 14}** We have remanded other cases for a determination in accordance with *Zoppo*. See, *e.g., State Farm Mut. Auto. Ins. Co. v. Reinhart* (1995), 71 Ohio

St.3d 654, 646 N.E.2d 1110.  However, such cases involved situations where the lower courts failed to find that the insurer had acted with intentional bad faith.  In this case, the jury found Midwestern liable under the stricter standard of intent under *Said*.  Midwestern suffered no prejudice, and, as in *Roberts*, judicial economy dictates that this case proceed to a final resolution.  We conclude that the court of appeals' rigid application of *Peerless* was inappropriate in this situation.  Therefore, we reverse the judgment of the court of appeals on this issue and reinstate the jury's verdict in favor of Ruth and Verlin Wagner on their claims of bad faith.  Accordingly, we also reinstate the verdicts awarding them attorney fees of $85,193.12 and punitive damages in the amount of $800,000.

## II.  The Innocent Spouse Rule

{¶ 15} After opening statements, the Wagners moved for a directed verdict in favor of Ruth Wagner based on the "innocent spouse" rule.  The trial court granted her a directed verdict on her breach of contract claim, holding as a matter of law that Ruth Wagner was an innocent spouse and was entitled to one-half of any contractual damages.  The court of appeals, however, reversed the trial court's directed verdict and held that the innocent spouse rule can be contractually nullified by the terms of the insurance contract and, in this case, the wording of the contract specifically negated the innocent spouse rule.

{¶ 16} Different theories have emerged concerning whether the fraudulent behavior of one spouse should be automatically imputed to the other coinsured spouse without proof of the latter's misconduct.  See *Vance v. Pekin Ins. Co.* (Iowa 1990), 457 N.W.2d 589, and cases cited therein.  Traditionally, older cases automatically denied an innocent spouse the right to recover under an insurance policy if the other spouse had committed misconduct, as the rights and obligations of the parties under the contract were presumed to be joint.  These older cases were based on the property ideal of the unseverability of estates, the notion that a husband and wife were a single entity, and concern that the guilty party would indirectly

6

benefit through the innocent spouse because of the complicity of the marital relationship. See, *e.g., Matyuf v. Phoenix Ins. Co.* (1933), 27 Pa.D & C.2d 351; *Kosior v. Continental Ins. Co.* (1938), 299 Mass. 601, 13 N.E.2d 423; Watkins Schoenig, Property Insurance and the Innocent Co-Insured: Was it All Pay and No Gain for the Innocent Co-Insured? (1995), 43 Drake L.Rev. 893, 896-897. However, modern cases have properly rejected this reasoning and instead have adopted an approach based on contract principles to determine whether the parties intended joint or several coverage. *Vance v. Pekin Ins. Co.*, 457 N.W.2d at 592; *Watson v. United Serv. Auto. Assn.* (Minn.1997), 566 N.W.2d 683, 688-689; *Buckeye Union Ins. Co. v. Phillips* (Aug. 7, 1986), Defiance App. No. 4-84-7, unreported, 1986 WL 8684. In determining whether the parties contemplated joint or several coverage, the terms of the contract are to be considered, *Vance*, 457 N.W.2d at 592, and "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

{¶ 17} In this case, the insurance contract stated that along with the named insured:

"The term 'You' or 'Your' in this policy means:

" * * *

"2. Your spouse if you are an individual proprietor."

{¶ 18} We find that the contract language clearly and unambiguously contemplated that Ruth and Verlin Wagner were jointly covered under the insurance policy and, therefore, she was not entitled to a separate recovery. See, *e.g., Hall v. State Farm Fire & Cas. Co.* (C.A.5, 1991), 937 F.2d 210, 213-214; *Vance*, 457 N.W.2d at 592-593. Accordingly, we affirm the judgment of the court of appeals and hold that Ruth Wagner was not entitled to a directed verdict as an innocent spouse.

**{¶ 19}** We reject Midwestern's claim that Ruth was precluded from suing in contract, regardless of whether she was an innocent spouse, since she had never separately and individually filed a proof-of-loss claim. When filing a statement of proof of loss, "if there are several insured, any one may act. It is not necessary to join all." 3 Freedman's Richards on Insurance (6 Ed.1990) 229, Section 17:30. Moreover, the contract language specifically stated that "[i]f more than one insured is named in this policy, the first one named shall act for all." Ruth Wagner was defined as an insured under the policy. As such, it was unnecessary for her to file a separate proof-of-loss claim because Verlin had acted on behalf of all insureds under the policy.

**{¶ 20}** Ruth was not entitled to a directed verdict, but the court of appeals properly found that Ruth's breach of contract claim would have been successful based on the jury's verdict in favor of her husband's claim. Therefore, Ruth Wagner's breach of contract claim is remanded and the trial court is instructed to enter judgment consistent therewith. The court of appeals found that the jury's award of $1,000,000 in contract damages was excessive and properly reduced damages to $197,701.98, to which Ruth Wagner is jointly entitled.

### III. Prejudgment Interest

**{¶ 21}** The court of appeals determined that the trial court abused its discretion in awarding prejudgment interest based on the fact that the appellants never made a reasonable offer of settlement after initiation of their court action. Appellants urge that the filing of their proof-of-loss claim constituted their offer of settlement and that the law does not require that a formal settlement offer be made only after a lawsuit has commenced. The trial court had awarded prejudgment interest primarily based on the criteria set forth in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, and Midwestern's inordinate delay.

**{¶ 22}** Ohio's prejudgment interest statute, R.C. 1343.03(C), stated:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." 139 Ohio Laws, Part I, 2034, 2035.

{¶ 23} A trial court's grant of prejudgment interest will be upheld absent an abuse of discretion. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 203, 495 N.E.2d 572, 574.

{¶ 24} In *Moskovitz v. Mt. Sinai Med. Ctr.*, *supra*, we elaborated on the "good faith effort to settle" requirement originally set forth in *Kalain*. "The effect of *Kalain* is to place the burden of proof on a party seeking prejudgment interest. This is, to a degree, unfortunate since much of the information needed to make a case for prejudgment interest is in the possession of the party resisting an award. Accordingly, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses—or lack thereof—and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient. These factors, and others where appropriate, should be considered by a trial court in making a prejudgment interest determination." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d at 659, 635 N.E.2d at 348.

{¶ 25} However, in *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 644 N.E.2d 298, we found that a plaintiff is relieved of any obligation to continue efforts to negotiate where he or she is told that a settlement offer will never

be made and any additional negotiation would be considered "a vain act." *Id.* at 429, 644 N.E.2d at 304.

{¶ 26} At the prejudgment interest hearing, Midwestern's trial attorney testified that he had already told the Wagners, after they had filed the proof-of-loss claims, that "we're not paying you one thin dime." Based on *Galayda*, we conclude that the trial court did not abuse its discretion in determining that any further attempt by the Wagners to settle would have been in vain, since Midwestern had already announced that it would not pay anything. The court of appeals failed to address the effect of *Galayda*, and the fact that the trial judge properly considered the factors set forth in *Moskovitz*. In light of this, we reverse the judgment of the court of appeals on this point and reinstate the trial court's decision awarding prejudgment interest on the Wagners' compensatory damages. The issue is remanded to the trial court to calculate interest in accordance with the reduced amount of $197,701.98 for breach of contract, as well as the reinstated amount of $1,300,000 in damages awarded for bad faith.[2]

## IV. Cross-Appeal of Midwestern

{¶ 27} Midwestern, as cross-appellant, argues that an insurer who has a reasonable basis for denying coverage should not incur bad faith liability as a matter of law, and essentially submits that it was entitled to a directed verdict in its favor on the Wagners' bad faith claims.

{¶ 28} Midwestern asks this court to adopt the "good faith as a matter of law" rule. Pursuant to this rule, Midwestern would not be liable for bad faith unless the trial court could have properly entered a directed verdict for the claimant on his or her contract claim. However, Civ.R. 50(A)(4) provides, "When a motion for a

---

2. When this case was argued before this court, we had not yet announced our decision in *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. Pursuant to *Landis*, the trial court, on remand, is directed to calculate the interest due on the breach of contract award under R.C. 1343.03(A), while the interest due on the bad faith award will be calculated under R.C. 1343.03(C).

directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." In *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 671 N.E.2d 252, we stated further, " 'When a motion for a directed verdict is entered, what is being tested is a question of law, that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses.' " *Id.* at 119, 671 N.E.2d at 255, quoting *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St.2d 66, 68-69, 23 O.O.3d 115, 116-117, 430 N.E.2d 935, 938. Clearly, the record in this case demonstrates that the Wagners presented sufficient evidence to create a jury question on the issue of bad faith. For instance, the evidence reveals that Mr. Wagner was cooperative and candid during the investigation of the claim, and there is no evidence that he was ever officially questioned or charged with arson. There was also expert testimony from which the jury could conclude that the fire could have been accidentally caused by an electrical spark that ignited the insecticide vapor. Finally, the jury could reasonably have found bad faith from the fact that Midwestern waited nearly a full year after its physical investigation had been completed before refusing the claim.

{¶ 29} Accordingly, we affirm the judgment of the court of appeals with regard to the directed verdict in favor of Ruth Wagner and the remittitur of contract damages to $197,701.98. We reverse the judgment of the court of appeals and hold that a remand of the bad faith issue is unnecessary and reinstate the verdicts finding Midwestern liable for bad faith. We reinstate the jury's award of punitive damages and attorney fees. We also reverse the judgment of the court of appeals and reinstate the trial court's award of prejudgment interest. We remand the issue for a

calculation of prejudgment interest due on the reinstated awards for bad faith, as well as on the contract damages as reduced by the remittitur.

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent in part.

_____

**COOK, J., dissenting in part.**

{¶ 30} Because the Wagners failed to prove their bad faith claim at trial, I respectfully dissent.

{¶ 31} In *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus, the court set out the following test for determining whether an insurer breaches its duty to process claims in good faith: "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. (*Hart v. Republic Mut. Ins. Co.* [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and *Staff Builders, Inc. v. Armstrong* [1988], 37 Ohio St.3d 298, 525 N.E.2d 783, approved and followed; *Slater v. Motorists Mut. Ins. Co.* [1962], 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, overruled; *Motorists Mut. Ins. Co. v. Said* [1992], 63 Ohio St.3d 690, 590 N.E.2d 1228, overruled to the extent inconsistent herewith.)"

{¶ 32} To demonstrate that the Wagners presented sufficient evidence to create a jury question on their bad faith claim, today's majority cites evidence (1) that Mr. Wagner was cooperative and candid during the investigation of the claim, (2) that he was never officially questioned or charged with arson, and (3) that there was expert testimony from which a jury could conclude that the fire could have been accidentally caused. Additionally, the majority says that the bad faith claim

could have been supported by Midwestern's delay in refusing the Wagners' claim. None of the facts discussed by the majority, however, tends to prove the *unreasonableness* of Midwestern's stated justifications for denying the Wagners' claim as required by *Zoppo*. Instead, they tend to prove only a breach of the insurance contract.

**{¶ 33}** Midwestern justified its refusal of the Wagners' claims on two grounds: (1) that it suspected Mr. Wagner of intentionally setting the fire, and (2) that, after the fire, Mr. Wagner seriously misrepresented his financial status to Midwestern. The "Special Businessowners Policy" between Midwestern and the Wagners excludes coverage for losses caused by fraudulent or dishonest acts committed by Mr. Wagner. It also would allow Midwestern to void the entire policy if Mr. Wagner, or someone on his behalf, made misrepresentations with an intent to deceive Midwestern.

**{¶ 34}** Bad faith is not shown by a mere breach of a contractual duty. *Helmick v. Republic-Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph two of the syllabus. Although *Zoppo* made it clear that actual intent is not a necessary element of a bad faith claim, it cannot be read to dispense with the insured's duty to prove that the insurer committed some act above breaching the insurance contract.

**{¶ 35}** In *Zoppo*, the court pinned its approval of a bad faith award on the insurance company's failure to adequately investigate a bar owner's claim for fire damage. As in the present case, the insurance company in *Zoppo* denied its insured's claim because of its belief that the insured deliberately set fire to his business premises. That, however, is where the similarities between *Zoppo* and the case now under consideration end. At trial, the *Zoppo* plaintiff produced evidence that the insurance company failed to seriously explore leads that others had set the fire. Those leads included the following: (1) that Zoppo had ousted several men from his bar, who then threatened to burn the bar down, (2) that three weeks before

the fire in question, there had been an attempt to set the bar on fire, (3) that two men whom Zoppo had ousted from his bar publicly bragged that they were responsible for the attempted fire, and (4) that one of those men also told a group of bar patrons that he had set the actual fire. The *Zoppo* plaintiffs additionally produced evidence that, despite these leads, and despite the fact that there appeared to be a break-in and robbery connected with the fire, the insurance company failed to locate key suspects, verify alibis (including Zoppo's), follow up with witnesses, or ask anything but cursory questions of suspects other than Zoppo. Finally, the *Zoppo* court noted that part of the insurer's denial of the claim was based on its belief that Zoppo had a motive to destroy the bar—financial gain. Zoppo purchased the bar six months before the fire for $10,000 and insured it for $50,000. Other information, either possessed by or readily discoverable to the insurer, however, undermined the reasonableness of the insurer's belief. The insurer's own initial underwriting report stated the building's market value as $95,798. Additionally, Zoppo had no debts and had actually made improvements to the bar before the fire. *Id.*, 71 Ohio St.3d at 555-556, 644 N.E.2d at 400.

{¶ 36} In contrast to *Zoppo*, when the evidence is construed most favorably to the plaintiffs' in this case, there still is nothing to justify a finding of bad faith. Instead, the Wagners' evidence provides only a foundation for the fact-finder to reject the insurer's defenses to the breach of contract claim.

{¶ 37} At trial, Midwestern provided evidence that at the time it rejected the claim it was in possession of information tending to demonstrate that the fire at the Wagners' store had been set deliberately, and that Mr. Wagner possessed both the means and a motive to set the fire. Two separate reports—one by an independent consulting firm and another by the Fostoria Fire Department—stated that the fire had been incendiary in nature. There were no signs of a forced entry into the store. And, by his own account, Mr. Wagner locked the store up only minutes before the fire alarm sounded.

14

{¶ 38} Furthermore, Mr. Wagner had serious financial difficulties. He had filed for bankruptcy, failed to pay payroll taxes for the previous year, and owed over $100,000 in federal income taxes. Moreover, sales had been declining steadily at the Wagners' store over the last five years and, over the last two to three years, the Wagners had unsuccessfully attempted to sell their business.

{¶ 39} Finally, Mr. Wagner twice misrepresented to a Midwestern investigator that he was current on his bills and denied that he was involved in a civil action despite his pending bankruptcy petition.

{¶ 40} Faced with the reasons stated by Midwestern for denying coverage, the Wagners failed to present sufficient evidence to raise a jury question that Midwestern's actions were unreasonable and therefore gave rise to a bad faith claim. The Wagners' expert opined that the fire was caused accidentally and that the source of ignition was an electrical spark that reacted with bug spray vapors to cause an explosion. He also testified, however, that his theory of causation involved a rare phenomenon that is not generally known in fire department circles. The Wagners' expert also criticized the investigative techniques and thoroughness of the Fostoria Fire Department and the insurance company's independent investigator, but these criticisms fall far short of establishing bad faith on the part of the insurance company itself. Compare *Zoppo*.

{¶ 41} Finally, Midwestern's delay in denying the Wagners' claims after Mr. Wagner filed a sworn proof of loss does not, in itself, provide a basis for a bad faith award. While the delay arguably ran afoul of the contract terms, it did not render Midwestern's denial of the Wagners' claims unreasonable—which is the ultimate focus of the *Zoppo* bad faith inquiry.

{¶ 42} Accordingly, I believe that the trial court erred in failing to direct a verdict in favor of Midwestern on the Wagners' bad faith claims. The Wagners should not be permitted to recover bad faith damages and thus are not entitled to punitive damages or attorney fees. See *Helmick v. Republic-Franklin Ins. Co.*, 39

Ohio St.3d at 75, 529 N.E.2d at 468. And, as an additional consequence, prejudgment interest should be calculated on only the $197,701.98 breach of contract award. More important, however, I fear that today's application of *Zoppo* will further blur the distinction between the proof required to create a jury question on a breach of contract committed by an insurer and a cause of action in tort for bad faith.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

—————————