OPINION
{¶ 1} Defendant-appellant Grange Mutual Casualty Company ("Grange") appeals the decision of the Morrow County Court of Common Pleas which denied its motion for summary judgment, and the decision of the Morrow County Court of Common Pleas which entered judgment against Grange. Plaintiffs-appellees are Grange insureds, Teresa and Gregory Ash.
 STATEMENT OF FACTS AND LAW {¶ 2} At all times relevant hereto appellees carried a farmowners policy of insurance with appellant Grange that covered, among other things, the family home. On April 14, 2002, appellee Gregory Ash told his fifteen-year old son to go outside, doused a couch in the family home with lighter fluid, and set the couch on fire in a failed attempt to commit suicide. Appellee Teresa Ash was not at home at the time, nor was she in any way involved in setting the fire. The appellees' home was completely destroyed by the fire.
 {¶ 3} Following the fire, the appellees filed proof of loss statements pursuant to the terms of the Grange policy. Grange subsequently denied the appellees' claim on the basis of an intentional act exclusion contained in the policy, which provided:
"C. EXCLUSIONS
* * *
4.) Intentional Loss
We will not pay for loss or damage arising out of any act committed:
a. By or at the direction of any `insured'; and
b. With the intent to cause a loss."
 {¶ 4} The word `insured' is defined by the policy as follows: "H. DEFINITIONS
* * *
4.) `Insured' means you and if you are an individual, the following members of your household:
a. Your relatives;
b. Any other person under the age of 21 who is in the care of any person specified above."
 {¶ 5} The policy provides further:
"Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations. . . ." The Named Insured listed on the Declarations Page of the subject policy is "Gregory E. Teresa A. Ash."
 {¶ 6} The appellees filed a complaint for declaratory judgment and bad faith with the Morrow County Court of Common Pleas asking the trial court to declare that coverage existed under the subject policy and that appellant acted in bad faith in denying the appellees' claim. Appellant filed an answer and counterclaim for declaratory judgment, asking the trial court to declare that the appellees' loss was not covered under the terms of the policy. The appellant and appellees each filed motions for summary judgment on the issue of coverage, both of which were denied by the trial court. Following a bench trial, the court found that appellant failed to meet its burden of proving that the exclusionary language applied to the appellees loss insofar as appellant failed to demonstrate that the "insured" acted intentionally with the purpose to create a loss under the policy as defined within the policy.
 {¶ 7} Appellant appealed, setting forth the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN DENYING THE SUMMARY JUDGMENT MOTION OF DEFENDANT GRANGE MUTUAL CASUALTY COMPANY.
 {¶ 9} "II. THE TRIAL COURT ERRED IN ENTERING JUDGMENT FOR PLAINTIFF/INSUREDS."
 I {¶ 10} In its first assignment of error the appellant argues that the trial court erred in denying its motion for summary judgment and finding that genuine issues of material fact existed with regard to whether the intentional act exclusion applied to appellee Gregory Ash's act of setting fire to the insured home. We agree.
 Summary Judgment Standard of Review {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 12} "Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial." Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 13} It is pursuant to this standard that we review appellant's first assignment of error.
 The Intentional Act Exclusion {¶ 14} Application of an intentional act exclusion was the issue in Physicians Ins. Co. Of Ohio v. Swanson (1991),58 Ohio St.3d 189, 569 N.E.2d 906 ("PICO"). In PICO, the insured shot a BB gun in the general direction of a group of teenagers from a distance of approximately seventy to one hundred feet. The insured testified that he was aiming for a nearby stop sign, and that his intent was to scare the group. One of the members of the group was struck in the eye and sued for damages. The Court, in finding the intentional act exclusion to be inapplicable, stated that "there is a very real distinction between intending an act and intending a result." Id. at 192. The Court held, "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Id. at syllabus.
 {¶ 15} The intentional act exclusion issue was subsequently addressed by the Court in the case of Gearing v. NationwideInsurance Company (1996), 76 Ohio St.3d 34, 1996-Ohio-113,665 N.E.2d 1115. In Gearing, the insured sexually molested three minor children. When he was sued by the parents of the minor children, the insured sought coverage under the terms of his homeowners policy, claiming that while he intentionally engaged in sexual touching of the minor children, he did not intend to harm them. Coverage was denied on the basis of the intentional act exclusion. In affirming the decision of the lower court, theGearing Court adopted the "inferred intent" rule, under which intent is inferred as a matter of law from the act itself, regardless of the actor's subjective intent. Id. at 37. The Court held: "Thus, in those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured's protestations that he `didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantially certain to result in injury." Id. at 39.
 {¶ 16} The inferred intent rule was applied by this court in the case of Adkins v. Ferguson, Ashland App. No. 02 CA 34, 2003-Ohio-403. In Adkins, the insured pointed a shotgun at the appellant's decedent and fired, fatally injuring him. The insured claimed that he had attempted to fire the gun a few months earlier, but it would not fire, and he assumed it was broken. He claimed further that he did not intend to injure the decedent, but rather, merely scare him.
 {¶ 17} In affirming the lower court's application of the intentional act exclusion to find no coverage, this court recognized that a distinction exists between intending an act and intending the resultant harm, but held that "[b]ecause of the inherently dangerous nature of a firearm, the use of which is likely to produce death, the specific intent to kill may be reasonably inferred . . . Further, the act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." Citations omitted. Id. at ¶ 31. Accord, Mennonite Mutual Insurance Co. v.Mitchell (Apr. 15, 1999), 5th Dist. No. 1998AP090106,1999 WL 254522.
 {¶ 18} In the case at hand, insured Gregory Ash intentionally set his home ablaze. He claims his intent was self-immolation, and not the destruction of the home. However, Gregory Ash's subjective intent is only relevant "where the intentional act at issue is not substantially certain to result in injury". See,Gearing, supra. In the case before us, the appellee intended to take his life by setting fire to his home with the intent to perish in the fire.[1] The natural and probable consequence of this act was that the home would be destroyed. Stated another way, when an insured attempts to commit suicide by setting fire to his home, the home is substantially certain to be damaged or destroyed. As such, the insured's intent may be inferred for purposes of an intentional act exclusion analysis.
 The Innocent Spouse Rule {¶ 19} Appellees argue that the coverage afforded by the Grange policy was several and not joint in nature, and that Teresa Ash should not be precluded from recovering under the policy based upon the actions of her husband.
 {¶ 20} In the case of Wagner v. Midwestern IndemnityCompany (1998), 83 Ohio St.3d 287, 1998-Ohio-111,699 N.E.2d 507, the insureds, husband and wife business owners, brought a breach of contract and bad faith claim against their insurer, who had denied a fire loss claim based upon the husband's suspected arson. One of the arguments proffered by the wife was that if in fact her husband had started the fire, she had not participated in it and should not be prevented from recovering under the terms of the subject policy. The Court addressed the "innocent spouse" rule, stating: "Traditionally, older cases automatically denied an innocent spouse the right to recover under an insurance policy if the other spouse had committed misconduct, as the rights and obligations of the parties under the contract were presumed to be joint. These older cases were based on the property ideal of the unseverability of estates, the notion that a husband and wife were a single entity, and concern that the guilty party would indirectly benefit through the innocent spouse because of the complicity of the marital relationship . . . However, modern cases have properly rejected this reasoning and instead have adopted an approach based on contract principles to determine whether the parties intended joint or several coverage . . . In determining whether the parties contemplated joint or several coverage, the terms of the contract are to be considered, . . . and `[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'" Citations omitted. Id. at 291.
 {¶ 21} Thus, the innocent spouse rule may be nullified by the terms of the insurance contract, and the question of whether or not a policy of insurance provides joint or several coverage depends completely upon the language contained in the subject policy.
 {¶ 22} The Grange policy designates Gregory E. Teresa A. Ash as the named insureds. It states that "you" and "your" refer to the named insured shown in the declarations, and states further that "insured" means you (the named insured) and, if you are an individual, your relatives who are members of your household. Most importantly, the intentional act exclusion states that Grange will not pay for loss arising out of any act committed by or at the direction of any insured. Using the plain meaning of the contract language, the Grange policy nullifies the innocent spouse rule and provides joint coverage.
 {¶ 23} In Bocook v. Sandy Beaver Valley Farmers Mut. Ins.Co., Highland App. No. 02CA4, 2002-Ohio-6307, appeal not allowed, 98 Ohio St.3d 1490, 2003-Ohio-1189, 785 N.E.2d 472, the Bocooks' adopted children doused the inside of the family home with gasoline and set fire to the house. The fire destroyed the home and its contents, and nearly killed the Bocooks. The Bocooks filed a claim with their insurer, Sandy. Sandy denied the claim based upon the intentional act exclusion, and the Bocooks filed a complaint against the insurer. The trial court granted the insurer's motion for summary judgment, and the Bocooks appealed. The court of appeals affirmed the decision of the trial court, stating: "Under Ohio law, `if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.' With regard to insurance contracts in particular, `[w]hen the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language.' . . . When a homeowners' policy contains language excluding coverage for losses intentionally created by insureds, that policy will operate to exclude coverage for all insureds, even if one insured acts alone in setting fire to their home. . . ." Citations omitted. Id. at ¶ 11.
 {¶ 24} The Bocook court went on to hold that, although the Bocooks were sympathetic plaintiffs, their loss was simply not covered by the unambiguous terms of the Sandy policy. Id. at ¶ 12.
 {¶ 25} In the case sub judice, the clear and unambiguous language of the Grange policy states that it will not pay for loss or damage arising out of any act committed by or at the direction of any insured with intent to cause a loss. Gregory Ash was an insured under the terms of the policy, and, as stated above, his intent to cause the loss may be inferred from his intentional act of setting fire to the family home. Teresa Ash is without a doubt a sympathetic plaintiff, but the loss caused by her husband, insured Gregory Ash, is simply not covered under the terms of the Grange policy.
 {¶ 26} Based upon the foregoing facts and applicable law, the appellant was entitled to summary judgment. Accordingly, the decision of the trial court denying appellant's motion for summary judgment is reversed.
 II {¶ 27} In its second assignment of error the appellant argues that the trial court erred in entering judgment for the plaintiff/insureds. We have concluded that summary judgment was warranted in favor of appellant. Therefore, based upon our holding with regard to the appellant's first assignment of error, we find this issue moot. See, e.g., State v. Bistricky (1990),66 Ohio App.3d 395, 397, 584 N.E.2d 75.
 {¶ 28} Appellant's second assignment of error is overruled as moot.
 {¶ 29} For the reasons stated in the foregoing opinion, the judgment of the Morrow County Court of Common Pleas is hereby reversed and this matter is remanded to the trial court.
Edwards, J. John W. Wise, P.J. and Sheila G. Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morrow County Court of Common Pleas is reversed and this matter is remanded to the trial court. Costs assessed to appellees.
[1] The insured did not attempt to take his life by sitting in a closed garage with the engine running, an act in which the likelihood that an accidental spark would start a fire and destroy the property may not be substantially certain to occur or may not be a natural and probable consequence.