[Cite as *First Natl. Community Bank v. Garretson Firm Resolution Group*, 2017-Ohio-7582.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FIRST NATIONAL COMMUNITY BANK, et al., | : | APPEAL NO. C-160745 |
| | | TRIAL NO. A-1201131 |
| Plaintiffs, | : | |
| | : | *O P I N I O N.* |
| and | : | |
| MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP., | : | |
| Intervening Plaintiff-Appellee, | : | |
| vs. | : | |
| THE GARRETSON FIRM RESOLUTION GROUP d.b.a. GARRETSON RESOLUTION GROUP, INC., as Tort Claims Trustee for the Tronox Incorporated Tort Claims Trust, | : | |
| | : | |
| Defendant, | : | |
| and | : | |
| THE POWELL LAW GROUP, P.C., | : | |
| Intervening Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 13, 2017

*Thompson Hine, LLP*, and *Robert P. Johnson* for Intervening Plaintiff-Appellee Montgomery, McCraken, Walker & Rhoads, LLP,

*Graydon, Head & Ritchey, LLP*, and *Dwight A. Packard, II*, and *John C. Greiner* for Intervening Defendant-Appellant, The Powell Law Group, P.C.

**MILLER, Judge.**

{¶1} We are presented with an attorney fee dispute between two law firms stemming from their successful efforts on behalf of mass tort claimants. The Powell Law Group ("PLG") appeals from the trial court's granting of summary judgment in favor of Montgomery, McCraken, Walker & Rhoads, LLP, ("MMWR") declaring that MMWR is entitled to an attorney's charging lien in the amount of $2,951,316.06, plus interest. We affirm.

### Facts

{¶2} PLG and MMWR are both Pennsylvania law firms. PLG represented over 4,000 plaintiffs in a lawsuit ("the Avoca Litigation") for injuries resulting from exposure to creosote oil and other hazards from a facility operated by Tronox, Inc., in Avoca, Pennsylvania. When Tronox and its parent company filed for bankruptcy, MMWR agreed to help PLG secure money damages for PLG's Avoca Litigation clients in the Tronox bankruptcy proceedings. To this end, the parties entered an agreement ("the MMWR/PLG Agreement"). In relevant part, the MMWR/PLG Agreement stated that, in return for its services, MMWR was to be paid the higher of one percent of the cumulative gross recovery of all of PLG's Avoca Litigation clients, or a loadstar multiplier of MMWR's time billed. The MMWR/PLG Agreement also stated that MMWR's fee would come from PLG's 40 percent contingent fee from its Avoca Litigation clients, and from no other source. In other words, MMWR's fee was part of PLG's contingency fee, and not in addition to it.

{¶3} MMWR played a significant role in securing more than $314,000,000 for PLG's Avoca Litigation clients though the creation of a torts claim trust ("the Tronox Trust") for the benefit of the Avoca Litigation clients, among others. It is

undisputed that PLG is entitled to be paid its 40 percent Avoca Litigation contingency fee from the Tronox Trust.

{¶4}   The Garretson Resolution Group, Inc., ("Garretson"), located in Hamilton County, administers the Tronox Trust pursuant to the Tronox Incorporated Torts Claims Trust Agreement ("Tronox Trust Agreement").   On February 15, 2011, before the Tronox Trust had been fully funded, and before the Avoca Litigation clients were entitled to distributions from it, the Tronox Trust Agreement directed Garretson to allow PLG a distribution of $3 million.   This February 15, 2011 disbursement, an advance on PLG's 40 percent contingency fee, was intended "as partial compensation and reimbursement for the fees, costs, and expenses (including but not limited to, expert witness and consulting expert fees, fees for outside counsel retained by PLG related to committee and other work necessary to establish the Torts Claims Trust, and court costs) that PLG incurred in pursing the claims of its client * * * ."   At the time of the distribution, MMWR had billed PLG $1,478,465.94 based on the hourly multiplier set forth in the MMWR/PLG Agreement.   PLG paid nothing from this distribution to MMWR, despite MMWR being "outside counsel retained by PLG" to help create the Tronox Trust.

{¶5}   On September 16, 2015, the Tronox Trust was fully funded and PLG's Avoca Litigation clients' awards became payable, triggering PLG's 40 percent contingency fee to become payable.  According to Joe Brummer, general counsel and compliance officer at Garretson, as of January 28, 2016, Garretson was holding approximately $98 million dollars in PLG's attorney fees.  PLG had not requested disbursement of any of these funds.  Instead, PLG has used its interest in the Tronox Trust to secure a $35,666,666.67 line of credit.  This line of credit has been used to

pay the day-to-day operations of that firm, as PLG is largely defunct. None of the funds obtained under the line of credit were used to pay MMWR.

{¶6} Unable to collect its fee from PLG, MMWR intervened in this action and moved the trial court for a judgment declaring that it was entitled to an attorney's charging lien of $2,951,316.06, plus interest, over funds administered by Garretson in the Tronox Trust. This figure was based on MMWR's calculations using the percentage fee method set forth in the MMWR/PLG Agreement.

{¶7} MMWR and PLG both moved for summary judgment. The parties argued their respective positions under Pennsylvania law. The trial court ruled in favor of MMWR and declared that MMWR was entitled to an attorney's charging lien. It further determined that prejudgment interest on the first $1,478,465.94 of principal due to MMWR started to accrue on the date PLG was entitled to its distribution to pay outside counsel fees—February 15, 2011. The trial court also held that prejudgment interest on the remaining $1,472,850.12 began to accrue on September 16, 2015, the date that PLG's Avoca Litigation clients' claims became payable.

### Analysis

{¶8} In its sole assignment of error, PLG argues that the trial court erred in granting summary judgment in favor of MMRW. We review the granting of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party. Civ.R.

56(C); *Grafton*; *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶9} **PLG has forfeited its right to argue that Ohio law should apply.** PLG first contends that, under Ohio law, MMWR failed to establish that it was entitled to an attorney's charging lien. PLG did not make a choice of law argument in the trial court, and it cited Pennsylvania law in its pleadings in opposition to MMWR's motion for summary judgment. The trial court cited Pennsylvania law in its decision. For the first time, PLG now contends that Ohio law should control. It is well-settled that the failure to object to an issue in the trial court forfeits an appellant's right to argue that issue for the first time on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21. An exception to this rule is where an appellant makes a claim of, and can demonstrate, plain error. *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Here, PLG does not even attempt to argue that the trial court committed error, let alone plain error, in applying Pennsylvania law. It simply cites Ohio law in its appellate brief. Since PLG has not made a claim of plain error in the trial court's application of Pennsylvania law, we disregard its argument made under Ohio law.

{¶10} **MMWR established that it was entitled to an attorney's charging lien under Pennsylvania law.** In *Recht v. Urban Redev. Auth. of City of Clairton*, 402 Pa. 599, 608, 168 A.2d 134 (1961), the Supreme Court of Pennsylvania held that

> before a charging lien will be recognized and applied it must appear
> (1) that there is a fund in court or otherwise applicable for
> distribution on equitable principles, (2) that the services of the

5

attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

{¶11} PLG takes issue only with the trial court's determination that there was no genuine issue of material fact concerning the third prong of *Recht*, i.e., "that it was agreed that counsel look to the fund rather than the client for his compensation." In support of its argument, PLG cites *In re Indep. Pier Co.*, 210 B.R. 261 (E.D. Pa.1997), and *Tomalonis v. Early Am. Builders Inc.*, 61 Pa.D.&C. 4th 24 (2003), *aff'd* 841 A.2d 586 (Pa.Super.Ct.2003). These cases both stand for the principle that, in regard to the third prong of *Recht*, there must be an express agreement that an attorney will look to a particular fund, only, and not to his or her client for payment. These cases support MMWR's position, not PLG's.

{¶12} The MMWR/PLG Agreement stated that MMWR's payment would come from PLG's Avoca Litigation 40 percent contingency fee, and from no other source. PLG contends that, under this provision, MMWR cannot attach the proceeds in the Tronox Trust because the trust was not named in the agreement. PLG further argues that because it has not drawn its contingency fee from the Tronox Trust, the "fund" that MMWR is entitled to attach has not yet been created. We find these arguments to be unpersuasive.

{¶13} Here, it is undisputed that there is a fund that holds PLG's Avoca Litigation contingency fee: The Tronox Trust. It is also undisputed that the

6

MMWR/PLG agreement states that MMWR is to be paid from PLG's Avoca Litigation contingency fee. The fact that the MMWR/PLG Agreement did not specifically identify the Tronox Trust by name is of no consequence. First, the Tronox Trust did not exist at the time the parties entered their agreement. It was created, in part, by MMWR's work. So it would be impossible to have named the Tronox Trust as the payment source in the agreement. Second, PLG's Avoca Litigation contingency fee "fund" does, in fact, exist. Brummer testified that as of the date of his deposition in January 2016, the Tronox Trust held approximately $98 million in PLG's attorney fees.

{¶14} Boiled down to its essence, PLG wants us to hold that it can perpetually stave off paying MMWR its well-earned fee by refusing to accept its own fee distribution from the Tronox Trust, while still benefitting from MMWR's work by using MMWR's earned, available, uncollected fee as collateral for PLG loans. This we will not do.

{¶15} Based on the undisputed facts, we hold that, viewing the evidence in a light most favorable to PLG, the trial court did not err when it determined that there was no genuine issue of material fact and that MMWR was entitled to judgment as a matter of law.

{¶16} **The trial court did not abuse its discretion in awarding prejudgment interest.** PLG next takes issue with that part of the trial court's judgment declaring that (1) MMWR's prejudgment interest on the first $1,478,465.94 of MMWR's attorney's fees started accruing on February 15, 2011, and (2) MMWR's prejudgment interest on its remaining attorney's fee balance of $1,472,850.12 began accruing on September 16, 2015. We review the trial court's determination of when prejudgment interest began to accrue for an abuse of

discretion. *Chiquita Brands Intl., Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh PA*, 2015-Ohio-5477, 57 N.E.3d 97 (1st Dist.), ¶ 27, citing *Wagner v. Midwestern Indem. Co.*, 83 Ohio St.3d 287, 293, 699 N.E.2d 507 (1998).

{¶17} PLG contends that the trial court abused its discretion commencing the accrual of any interest on February 15, 2011 because, as of that date, the underlying tort claims in the Avoca Litigation had not been settled, and none of PLG's Avoca Litigation clients had started receiving payments. Because PLG's clients had not started receiving payments, PLG argues that it had not been entitled to its 40 percent Avoca Litigation contingency fee—the sole source of MMWR's attorney fees according to the MMWR/PLG Agreement. We find this argument to be unpersuasive.

{¶18} As of February 15, 2011, PLG was entitled to an advance of its contingency fee from the Tronox Trust to pay "fees for outside counsel retained by PLG related to committee and other work necessary to establish the * * * [Tronox Trust] * * *." As of February 15, 2011, MMWR had billed PLG $1,478,465.94 based on the hourly multiplier in the MMWR/PLG Agreement. Because the advance fees were specifically earmarked, in part, for outside counsel, we find no abuse of discretion in the trial court's declaration that prejudgment interest on $1,478,465.94 of MMWR's fee began to accrue on February 15, 2011.

{¶19} Likewise, the trial court did not abuse its discretion in finding that prejudgment interest on the balance of MMWR's fee, $1,472,850.12, began to run on September 16, 2015. This was the date that PLG's Avoca Litigation clients could begin receiving distributions from the Tronox Trust, and the date that PLG became entitled to receive its 40 percent contingency fee from those claims.

{¶20} Because the trial court's determination of when prejudgment interest began to accrue was not unreasonable, arbitrary or unconscionable, we find no error in the trial court's declaration concerning prejudgment interest. *See Blakemore v. Blakemore,* 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983).

## Conclusion

{¶21} The trial court properly entered judgment declaring that MMWR is entitled to an attorney's charging lien in the amount of $2,951,316.06, plus interest against PLG's contingency fee held in the Tronox Trust. We overrule PLG's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.