JOURNAL ENTRY and OPINION
This consolidated appeal consists of various appeals regarding the trial court's judgment as to a breach of a July 1993 Agreed Judgment Entry (Agreed Entry).[1] The Agreed Entry called for the city of Westlake (Westlake) to act in good faith as to Charles Shimola's development of his properties. Two years later, Charles Shimola and his aunt Angela Shimola sued Westlake for violation of the Agreed Entry. A year later Westlake sought to have the Agreed Entry invalidated.
The trial court upheld the Agreed Entry and dismissed Westlake's claim; dismissed all of Charles and Angela Shimola's tortious claims against Westlake; and allowed Charles Shimola's bad faith claim against Westlake to proceed to a jury trial. The jury returned a 2.5 million dollar verdict in favor of Charles Shimola.
Westlake moved for a judgment notwithstanding the verdict (JNOV) and a new trial. The trial court granted Westlake's motion and ordered Westlake to pay $61,728.81 in attorney fees to Charles Shimola's lawyers. All the parties appealed and assigned errors.[2]
We reverse the trial court's granting of Westlake's JNOV and order a new trial. We affirm the trial court's verdict as to Angela and Charles Shimolas' tort claims, and we affirm the trial court's decision dismissing Westlake's claim to invalidate the 1993 Agreed Entry. The apposite facts follow.
Angela Shimola and her nephew Charles Shimola own various pieces of property in Westlake. Charles Shimola has on various occasions attempted to develop his aunt's property, his parents' property, and property owned by his partnership with family members.
Charles Shimola's development efforts included the Hubbs Motel, a one-story building in need of repair. Shimola acquired the Hubbs Motel in 1987 with the intent of converting the building into townhouses by adding a second floor. Shimola approached Westlake with his plans to expand the Hubbs Motel in 1989. Westlake denied Shimola's request as an expansion of a non-conforming use because zoning of the property as general business did not permit the expansion of the property for motel or residential use. Shimola did not appeal Westlake's decision. Instead, he applied for a building permit to re-roof the Motel.
Westlake granted Shimola a one year permit to re-roof the Motel but limited the height of the roof to 6'. Westlake set the height limitation to prevent Shimola from using the re-roofing project as a means of building a second floor. Shimola failed to complete the project within a one year time frame allowed under the permit due to unfavorable weather conditions. Westlake reissued the permit in February 1990.
Over the next three years, Shimola and Westlake engaged in a number of disputes over the Hubbs' roofing project. In 1991, the city issued stop work orders for working on a Sabbath. Westlake also stopped the project when it discovered that Shimola was building the roof at a height of 7'4", exceeding the height limitations of his permit. In August 1991, the State Housing Board issued an adjudicative order, based on hardship, permitting Shimola to continue roofing at the 7'4" height but restricted use of the area under the roof to attic space only, no storage.
Despite the adjudicative order, the disputes continued, and ultimately a court order settled the matter. In June 1993, Charles Shimola and Westlake entered into an Agreed Judgment Entry as a resolution to litigation between the two parties. The Agreed Entry provided that Westlake issue a permit to Shimola to re-roof the Hubbs Motel and that the parties would act in good faith with each other in all future dealings. Both Westlake's Assistant Law Director and Building Director signed the Agreed Entry on behalf of the city of Westlake. The trial court retained jurisdiction to enforce the Agreed Entry.
Thereafter, Charles Shimola sought to develop property owned by his aunt into an auto body shop. Charles Shimola's plans for the automobile body shop called for a sewer running out the back of the property to utilize an existing sanitary sewer easement. In a meeting held in July 1993, the city council recommended approving plans for the auto body shop with some modifications.[3] The council also expressed concerns that Shimola's plan to install a sewer in the back of the property deviated from the city's master sewer plan calling for property owners to connect to a sewer that Westlake planned to install down Center Ridge Road at the front of Shimola's property. Council referred the plans for the auto body shop to the sanitation committee for further review.
In September 1993, the sanitation commission questioned whether Shimola possessed a sanitary sewer easement as he claimed and delayed approval of the auto body shop plans pending an investigation. In November 1993, the city law director met with Shimola and the city's engineering director. The city law director determined that Shimola had an easement and recommended permitting him to use it provided Shimola agree to grant the city an easement, pay assessments when the city installed a sewer down Center Ridge Road, and clear the junk cars from the property to Westlake's satisfaction. The law director referred the matter back to the sanitation committee.
The sanitation committee met again on December 8, 1993. Despite the law director's recommendation, the committee voted unanimously to require Shimola to install the sewer across the front of the property.
City Council ratified the sanitation committee's decision on December 16, 1993. Additionally, council required Shimola to install a six foot fence along the southernly parking lot area as a buffer. The council approved Shimola's development plan as modified by council at the July meeting with the inclusion of the six foot fence. The council's approval was conditional, subject to review and approval of the final improvement plans.
Charles Shimola began clearing the land for the auto body shop in 1994. In February 1994, the city, through its maintenance officer Richard Gorski, cited Angela Shimola, who owned the property being developed for the auto body shop, for cutting or permitting trees to be cut without a permit or tree preservation plan in violation of Westlake Ordinance 1137.03 and 1137.09, and for storage of commercial equipment on her property contrary to zoning requirements. Westlake also cited Charles Shimola for altering a sign located in his JoMar Shopping Center without a permit in violation of Westlake Ordinance 1223.15. Westlake initiated prosecution of the charges against the Shimola's in May 1994. The three prosecutions terminated when Charles Shimola, represented by his attorney, agreed to pay a portion of the court costs and refrain from further violations of the municipal ordinances in exchange for the prosecutor's agreement not to pursue the charges.
In October 1994, the city notified Charles Shimola that he needed to correct some deficiencies in the submitted plans before they could approve the auto body shop development for construction. In December, Shimola met with the city's engineering director, who informed Shimola that his plans failed to indicate a sanitary sewer or any provision to install a sanitary sewer.[4] At the suggestion of the city engineer, Shimola revised his plans to indicate that he would install a force main sewer at the front of the property. Following his meeting with the engineering director, Shimola submitted plans correcting the deficiencies and incorporating the engineering director's suggestion. Shimola also requested an extension of the one year deadline for gaining final approval of development plans.
After submitting the revised plans, Shimola learned that the city had no immediate plans to install a sewer down Center Ridge Road. Because council's requirement that Shimola install a sewer on his property in the front was based on the assumption that the city would run a sewer line down Center Ridge Road, Shimola requested that the sanitation committee revisit his proposal to install the sewer in the auto body development using his rear easement.
The sanitation committee met on April 12, 1995. The committee voted down the force main plan that Shimola submitted at the suggestion of the city's engineering director. Further, the committee refused to revisit Shimola's request to install a sewer using the rear easement.
Following the sanitation committee's decision, Shimola's attorney wrote to city council urging them to permit the transport of sewage using the rear easement and suggesting that failure to do so would result in litigation. City council met on April 20, 1995. The council rejected the sanitation committee's recommendation regarding the force main and did not vote on Shimola's proposal to use the rear easement. Instead, they voted to refer the matter to the law department to determine the conditions precedent to accepting Shimola's force main application at the next council meeting.
In May, Westlake provided Shimola with proposed conditions precedent to issuing a permit to use the rear sewer easement. Westlake's proposal required Shimola to grant the city a ten foot easement along the Center Ridge Road portion of the property. Further, the proposal required Shimola discontinue use of the rear sewer, tie into and pay sewer assessments when the city installed its sewer line down Center Ridge Road. Additionally, before any permit would be issued, the city required Shimola to clear debris and junk cars from the adjacent property. Shimola rejected the city's proposal.
On June 12, 1995, Charles and Angela Shimola filed an action requesting declaratory and injunctive relief against Westlake, its Mayor, and individual council members. Charles and Angela Shimola sought the ability to use their rear sewer easement for the auto body shop development.
On June 26, 1995, the Shimolas filed another suit naming Westlake and Richard Gorski, a property maintenance officer for Westlake, as defendants. In this second action, appellants sought monetary damages based on alleged tortious conduct and violations of the 1993 Agreed Entry.
On September 25, 1996, Westlake filed for declaratory judgment action against Charles Shimola. Westlake sought a declaration that the 1993 Agreed Entry was invalid and unenforceable.
The trial court, on motion by the Shimolas, consolidated the three cases in January 1998. On May 29, 1998, the trial court declared the 1993 Agreed Entry valid, disposing of Westlake's claim. The two remaining cases proceeded to a bifurcated trial with the parties trying the damage claims to the jury and the equitable claims to the bench.
Following the Shimolas' case in chief, Westlake moved for a directed verdict on the damage claims and for the dismissal of the Shimolas's equitable claims. The trial court declined to dismiss the Shimolas' equitable claims. However, the court granted Westlake's motion for a directed verdict dismissing all damage claims except Charles Shimola's claim against Westlake for failure to comply with terms of the 1993 Agreed Entry.
As evidence of damages, Charles Shimola testified that as a result of not being able to continue working on the Hubbs Motel, a big hole developed in the roof. Shimola testified that it would cost him $5,000 to repair the hole. He also testified that had the city permitted him to put the second story on the Motel as he proposed, he could have doubled his profits. He estimated that as a result of the city's failure to permit the expansion, he lost profits of approximately $50,000 per year. Charles Shimola also testified that he lost $15,000 in rent from his JoMar Shopping plaza when the city refused to issue sign permits for him for one of his tenants because the building belonged to Shimola.
Regarding Shimola's auto body shop development, Shimola testified that the metal sides he purchased for the building were damaged while he waited for the city to issue building permits. He testified that tree acid ate away the coating on the building materials while they were stored. He estimated that it cost him $11,000 to power wash, sand, scrape and repaint the materials.
Additionally, Charles Shimola presented the expert testimony of economist Dr. John F. Burke. Dr. Burke testified that his opinion to a reasonable economic certainty was that gross profits for the proposed auto body shop from 1994 to 1998 totaled $863,900. He also estimated anticipated gross profits for the new venture for the ten year period of 1998 to 2008 at $974,012. Dr. Burke testified that he based his estimates on his review of information found in auto body shop industry journals and the information Shimola provided about the location and size of the operation.
The court instructed the jury that in deciding whether the city complied with the Agreed Entry, it could consider the city's failure to grant Shimola's application to re-roof the Hubbs Motel and to issue related building permits. The court told the jury that it could not consider whether the city should have granted any other applications for permits because of Shimola's failure to appeal those decisions. However, the court instructed the jury that it could consider whether the city violated the agreement by failing to deal with any application in good faith.
Additionally, the court instructed the jury that if it found that Westlake violated the terms of the Agreed Entry, it should determine an amount that would fully compensate Shimola for his foreseeable losses. The court permitted the jury to consider lost profits demonstrated by a preponderance of the evidence and anticipated or future profits proved by clear and convincing evidence.
At the conclusion of the trial, the jury found Westlake liable to Charles Shimola on the damage claim and awarded him 2.5 million dollars. Westlake moved for a JNOV. or a new trial. The trial court granted Westlake JNOV. on the grounds that, although Westlake had failed to comply with the agreement, Charles Shimola failed to demonstrate any legally cognizable damages. The trial court also granted Westlake's motion for a new trial in the event that this Court disagreed with its JNOV. ruling. The trial court limited the new trial to damages arising out of Westlake's delay in granting him a re-roofing permit for the Hubbs Motel and/or by failing to deal with Mr. Shimola in good faith regarding his application to develop the automobile repair shop. Further, the trial court concluded that since the Shimolas were no longer a prevailing party, each party should bear its own costs. However, the court awarded Charles Shimola $61,728.81 in attorneys fees. This appeal followed. For purposes of this opinion, we will concern ourselves first with the jury verdict followed by the tort claims and then Westlake's appeal.
In assigned errors one, two, and three, Charles Shimola argues the trial court erred in granting Westlake's Judgment Notwithstanding the Verdict. We discuss those errors together because of the similarity of issues. The jury awarded Charles Shimola 2.5 million dollars in damages against Westlake for its breach of a court ordered agreement wherein Westlake agreed not to interfere with Charles Shimola's developments. The agreement did not give Charles Shimola carte blanche to develop his property, but we can conclude that it required Westlake to act in good faith. The trial judge concluded, after the jury's verdict, that Charles Shimola had not shown any legally recognizable damages and held the jury's verdict was laced with passion and prejudice, and furthermore, the evidence did not warrant the verdict.
Charles Shimola estimated the cost to repair the roof at the Motel was $5,000. He estimated a loss of $50,000 per year because he could not expand the motel due to the city's failure to permit the expansion. He also testified to a $15,000 loss of rentals from a shopping plaza due to a loss of a tenant who the city refused to issue a sign permit.
The bulk of his damages came from the auto body shop development which did not exist, but Shimola hoped to turn his aunt's land into such a venture because his brothers were engaged in an auto shop on the land at the time of the requested permit. His expert testified to lost profits for an auto body shop from 1994 to 1998 at $863,900, and from 1998 to 2008 at $974,012.
We disagree with the trial court's conclusion that Charles Shimola did not show any legally recognized damages; we do, however, agree that the measure was excessive, and because no remittitur was offered or even discussed, this matter should be retried.
Charles Shimola showed damages as to the motel development, the shopping center, and as to the auto body shop. It is unclear as to why the trial court found these damages not to be legally cognizable. Certainly, one could argue that the damages regarding the auto body shop were excessive, but we fail to see why they were not recognizable. The trial court as a matter of law found sufficient evidence to send this case to the jury on the issue of bad faith, and we agree with that conclusion.
We, of course, find difficulty in the award of damages as to the lost profits for this new business into the year 2008 when the business had not been formed and it was highly speculative that it would be developed.
However, in applying the standard of review in this case, we cannot say as a matter of law on the issue of loss profits of this new venture that reasonable minds could come to a conclusion that no damages had been proven. Consequently, we conclude the trial court, in essence, substituted its judgment for that of the jury.
The law on lost profits for new business is set forth in the syllabus three of AGF, Inc. v. Great Lakes Heat Treating Co. (1990), 51 Ohio St.3d 177, 555 N.E.2d 634. In AGF, the Supreme Court of Ohio held:
 [a] new business may establish lost profits with reasonable certainty through the use of such evidence as expert testimony, economic and financial data, market surveys and analyzes, business records of similar enterprises, and any other relevant facts.
Ordinarily, a showing of damages on lost profits is by its nature speculative; however, AGF requires a reasonable certainty finding.
The reasonable certainty standard applies to the cause or fact of damages not the amount. Modic v. Modic (1993), 91 Ohio App.3d 775,633 N.E.2d 1151. Here, the trial court concluded that no damages in fact existed. Clearly that is not the case because of the expert testimony. It appears to us that the only concern of the court was how much.
In Modic, we implied that the tortious acts of the party interfering with the business could be a measure of damages coupled with evidence of a decline in prices, profits, and values. Here, we have concluded that on the tortious conduct claims, Charles Shimola has no cause of action. Thus, he would have to show that the bad faith conduct of Westlake as to each of his projects contributed to his damages. These damages must be shown to have been reasonably anticipated. See AGF:
 (Although future profits as an element of damages may be more possible to prove with reasonable accuracy with regard to an interrupted business as opposed to a new business, new business may recover anticipated lost profits for breach of contract.)
AGF adopted the Combs three-part test for new business.
 The Supreme Court of Ohio stated that lost profits may be recovered by the plaintiff in a breach of contract action if: profits were within the contemplation of the parties at the time the contract was made, the loss of profits is the probable result of the breach of contract, and the profits are not remote or speculative and may be shown with reasonable certainty.
We now apply the Combs-AGF test to the businesses at issue in this case. We conclude the only issue in this case involves the third prong, which is the speculative nature of the profits of the auto body shop. We do not, however, agree with the trial court that the Hubbs Motel and the rentals on the other damages were speculative. Moreover, Charles argues that there was also evidence relating to the lost revenue at the motel because he was unable to rent a suite due to water damage and was unable to construct the second floor to the motel as he wished. He also testified that his Jo-Mar plaza, a proposed development, resulted in lost profits because he had been unable to build after the city re-zoned the property after he had submitted his development plan. Consequently, we return this matter to the trial court for a new trial.
This opinion in no way precludes Charles Shimola from presenting in a new trial any damages he suffered that meet theCombs-AGF reasonable certainty test. We thus conclude that Charles Shimola's fifth, sixth, seventh, eighth and ninth errors are moot in light of remand for new trial. This means that Charles Shimola may raise the prejudgment interest issue and may retry the issue of attorney fees. The re-trial of this case should not be impeded by any previous rulings made by the trial court. Consequently, the Charles Shimola's assigned errors one, two, and three are sustained.
We now address Charles and Angela Shimola' tort claims followed by Westlake's appeal regarding the validity of the 1993 Agreed Entry.
Angela and Charles Shimola argue that the trial court erred in directing a verdict in favor of Westlake, dismissing appellants' tort claims for trespass, malicious prosecution, invasion of privacy, and fraud. We disagree. The record demonstrates that the Shimola failed to make out a prima facie case under any of their tort claims. Consequently, the Shimolas' fourth assigned error is overruled, and Angela Shimola's three assigned errors are overruled.
Under Civ.R. 50(A)(4), a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the non-moving party. Wagner v. Midwestern Indemnity (1998), 83 Ohio St.3d 287,294, 699 N.E.2d 507.
A motion for directed verdict raises the legal question of whether the plaintiff presented evidence legally sufficient to submit the case to the jury. Id. When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence or the credibility of the witnesses. Texler v. D.O.Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679, 693 N.E.2d 271. If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Id. However, when the trial court after construing the evidence most strongly in the favor of the nonmoving party, finds that reasonable minds could reach but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court must grant the motion. Civ. 50(A)(4).
The Shimolas brought their trespass action against Richard Gorski, property maintenance officer for Westlake, and Westlake as his employer. The Shimolas alleged that Gorski committed a trespass to land harming their ownership or possessor rights to the land which Angela Shimola owned and Charles Shimola developed with her permission.
A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *. Abel v. Katz (1998), 83 Ohio St.3d 11, 19,697 N.E.2d 600. Lawfully established administrative regulations and the common law recognize a building inspector's or maintenance officer's privilege to enter land within his territorial jurisdiction for lawful investigative purposes. Ohio Admin. Code4101:2-1-32 (building inspectors may enter upon the premise at any reasonable time in the performance of their duties); see Hack v.Gillespie (1996), 74 Ohio St.3d 362, 365, 658 N.E.2d 1046 (police and firemen are licensees with privilege to enter premise in performing their duties).
The record in the present case demonstrates that Gorski entered onto the property owned by Angela Shimola, and while on the property, he observed and photographed various violations. Because Gorski entered the property in the performance of his duties as Westlake's property maintenance officer, the trial court properly determined, as a matter of law, that the Shimolas failed to establish a claim for relief under the tort of trespass against Gorski or Westlake as his employer.
The Shimolas also claimed that Gorski violated their right to privacy by taking photographs of property owned by Angela Shimola. An action for invasion of privacy lies against a public official acting in the scope of his official duties who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, * * *, if the intrusion would be highly offensive to a reasonable person and the public official undertook the surveillance in bad faith or with corrupt motive. Sustin v. Fee (1982), 69 Ohio St.2d 143, 145-146,431 N.E.2d 992. Further, because the action of invasion of privacy compensates the victim for mental suffering, shame or humiliation, the plaintiff must demonstrate that the intrusion caused some cognizable harm. Rothstein v. Montefiore Home (1996), 116 Ohio App.3d 775,689 N.E.2d 108.
In the present case, Gorski, in the course of his duties as maintenance officer, observed and photographed non-residential land, damaged automobiles, and automobile repair equipment without photographing or disclosing anything about either Charles or Angela Shimola. The Shimolas failed to provide evidence that Gorski's actions caused them any harm beyond their concern, and that Gorski might use such information in his official capacity to assert their violations of Westlake ordinances. Because appellants failed to present evidence of mental suffering, shame or humiliation, the trial court properly dismissed their invasion of privacy claim.
Likewise, the court correctly dismissed the Shimolas' claim that Gorski maliciously prosecuted them for violations of city ordinances. A claim for malicious prosecution requires proof that, among other things, the prosecution was terminated in favor of the plaintiff. Ash v. Ash (1995), 72 Ohio St.3d 520, 651 N.E.2d 945. In the instant case, the city of Westlake, through its maintenance officer, instituted prosecutions against Angela Shimola for cutting trees without a permit or tree preservation plan in violation of Westlake Ordinance 1137.03 and 1137.09 and for storage of commercial equipment on her property contrary to zoning requirements. The city prosecuted Charles Shimola for altering a sign without a permit in violation of Westlake Ordinance 1223.15. The prosecution terminated with Charles Shimola agreeing to pay a portion of the court costs and to refrain from further violations of the municipal ordinances in exchange for dismissal. A prosecution that is terminated by reason of a voluntary settlement or an agreement of compromise * * * is not indicative of guilt or innocence and, therefore, is not terminated in favor of the accused. Ash, supra.
Finally, the trial court properly determined that the Shimolas failed to demonstrate that Westlake fraudulently induced their concurrence in the Agreed Entry. To prevail on a claim for fraudulent inducement, a plaintiff must demonstrate (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. Gaines v. Preterm-Cleveland, Inc. (1987),33 Ohio St.3d 54, 55, 514 N.E.2d 709.
Charles Shimola alleges that Westlake committed fraud when it entered into the agreement because it had no intention of adhering to the Agreed Entry's terms. Evidence offered by Shimola that Westlake's mayor disfavored the agreement and subsequently sought to invalidate the Agreed Entry fails to demonstrate that the city knowingly misrepresented its intent to adhere to the agreement when entered.
Further, Shimola failed to identify any specific term of the agreement which he relied on to his detriment. On the contrary, the record demonstrates that Charles Shimola aggressively pursued his development activities with demands that the city comply with the terms of the Agreed Entry.
Angela Shimola's fraud claim fails because she was neither a party to the Agreed Entry nor an intended beneficiary of the agreement. To enforce rights under a contract as a third party beneficiary, the third party must show that the parties to the contract made the contract with an intent to benefit the third party. Trinova Corp. v. Pilkington Bros. P.L.C. (1994), 70 Ohio St.3d 271,638 N.E.2d 572; Visintine Company v. New York Chicagoand St. Louis Railroad (1959), 169 Ohio St. 505, 160 N.E.2d 311. A mere incidental or indirect benefit is insufficient to give the third party a right of action. Id. Thus, she lacked standing to enforce the terms of the agreement. See Trinova, supra, at 277;Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36,521 N.E.2d 780. Accordingly, the trial court properly dismissed her claim.
Although the court dismissed all of the tortious claims on directed verdict, removing them from the consideration of the jury, the Shimolas argue that the trial court erred in not instructing the jury that they should consider evidence of tortious conduct as evidence of Westlake's violation of the 1993 Agreed Journal Entry. However, a review of the record reveals that the Shimolas failed to raise this objection to the trial court's instruction before the jury retired. On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires. Leber v. Smith (1994), 70 Ohio St.3d 548,552, 639 N.E.2d 1159, 1162; Yungwirth v. McAvoy (1972),32 Ohio St.2d 285, 291 N.E.2d 739. This Court finds that the Shimolas waived consideration of this alleged error in the trial court's instructions to the jury by failing to raise it with the trial court. Consequently, Angela's and Charles's assigned errors are overruled as they pertain to the tort claims.
We now address Westlake's appeal in Case No. 75204 in which it sought a declaratory judgment finding the 1993 Agreed Journal Entry invalid. As its sole assigned error in that case, Westlake contends that the trial court erred in denying its motion for summary judgment and declaring the 1993 Agreed Journal Entry valid. When a trial court disposes of a declaratory judgment action by summary judgment, we review the trial court's resolution of the legal issues de novo. King v. Western Reserve Group (1997),125 Ohio App.3d 1, 707 N.E.2d 947.
Westlake's argument lacks merit. Its assistant law director, acting as counsel, signed the 1993 Agreed Journal Entry on behalf of Westlake. Where a municipal attorney enters into an agreed journal entry on behalf of the municipality, the terms of the agreed entry are binding on the municipality, even though the attorney lacked authority to enter into the agreement. ArgoPlastic Products Co. v. City of Cleveland (1984), 15 Ohio St.3d 389,474 N.E.2d 328,; see Weir v. Needham (1985), 26 Ohio App.3d 36,498 N.E.2d 175.
This cause is returned to the trial court for a new trial.
Judgment affirmed in part, reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCUR; ANN DYKE, A.J., CONCURS,IN JUDGMENT ONLY
 _______________________________ PATRICIA ANN BLACKMON, JUDGE
[1] July 1993 entry provided Westlake, its Mayor and its officials shall refrain from any acts or omissions contrary to or which interfere with the defendant, Charles Shimola's lawful development or use of any real property located within the city of Westlake. [Mr. Shimola's] applications to re-roof the main building and portico at the Hubbs Motel shall be approved and building permits issued forthwith. * * * Moreover, the parties agree that [sic] in all future dealings with each other to act in good faith.
[2] Assigned errors attached in Appendix.
[3] The required modifications included, among other things, adding masonry doors to the trash enclosure, and making the exterior of the building brick.
[4] Plans indicated that the sewer would be installed by others.
 APPENDIX
CASE NOS. 75164 AND 75165
CHARLES SHIMOLA'S ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE CITY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE STATE'S BASIS THAT APPELLANT PURPORTEDLY FAILED TO PRESENT EVIDENCE OF LEGALLY COGNIZABLE DAMAGES.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JUDGMENT NOTWITHSTANDING THE VERDICT AS TO THE AMOUNT OF THE DAMAGES AWARD WHERE THE COURT UPHELD THE JURY'S FINDING OF LIABILITY AND WHERE, VIEWING THE EVIDENCE AND ALL INFERENCES IN A LIGHT MOST FAVORABLE TO APPELLANT, A REASONABLE JURY COULD HAVE CONCLUDED THAT APPELLANT SUFFERED COMPENSABLE INJURIES OF AT LEAST $2,500.00.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AFFIRMING THE JURY'S LIABILITY FINDING AND YET VACATING THE JURY'S DAMAGES AWARD WITHOUT OFFERING APPELLANT THE OPTION OF A NEW TRIAL ON THE ISSUE OF DAMAGES.
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISMISSING APPELLANTS' TORT CLAIMS AND IN FAILING TO INSTRUCT THE JURY THAT IT SHOULD CONSIDER EVIDENCE OF SUCH TORTIOUS CONDUCT AS EVIDENCE OF THE CITY'S VIOLATIONS OF THE 1993 ENTRY IN DETERMINING BOTH LIABILITY AND DAMAGES.
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTIONS FOR COSTS AND PREJUDGMENT INTEREST AS MOOT.
 VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT APPELLANTS ANY EQUITABLE RELIEF AND IN ISSUING AN ADVISORY OPINION TO THE EFFECT THAT THE 1993 ENTRY WOULD BE HENCE-FORTH UNENFORCEABLE.
 VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CONDITIONALLY GRANTING THE CITY'S MOTION FOR NEW TRIAL.
 VIII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN LIMITING APPELLANT'S ATTORNEY FEE AWARD TO $61,728.81.
 IX. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANTS' MOTION FOR RULE 59 RELIEF ON THE BASIS THAT IT WAS PURPORTEDLY UNTIMELY.
ANGELA SHIMOLA'S ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISMISSING APPELLANTS' TORT CLAIMS AND IN FAILING TO INSTRUCT THE JURY THAT IT SHOULD CONSIDER EVIDENCE OF SUCH TORTIOUS CONDUCT AS EVIDENCE OF THE CITY'S VIOLATIONS OF THE 1993 ENTRY IN DETERMINING BOTH LIABILITY AND DAMAGES.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DISMISSING CERTAIN OF ANGELA SHIMOLA'S CLAIMS ON THE BASIS THAT SHE WAS NOT AN INTENDED BENEFICIARY OF THE AGREEMENT UNDERLYING THE 1993 ENTRY.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT APPELLANTS ANY EQUITABLE RELIEF AND IN ISSUING AN ADVISORY OPINION TO THE EFFECT THAT THE 1993 ENTRY WOULD BE HENCEFORTH UNENFORCEABLE.
CITY OF WESTLAKE'S CROSS ASSIGNMENT OF ERROR:
 I. THE TRIAL COURT ERRED WHEN IT AWARDED APPELLANTS ATTORNEY FEES IN THE AMOUNT OF $61,728.81.
CASE NO. 75204
CITY OF WESTLAKE'S ASSIGNMENT OF ERROR:
 I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND WHEN IT HELD THAT THE AGREED JOURNAL ENTRY OF JULY 2, 1993 WAS VALID.